## DETERMINED IN THE

# FOURTH DEPARTMENT,

### AT

# GENERAL TERM.

## April, 1883.

---

GILES EVERSON, Appellant, v. THE CITY OF SYRACUSE, Respondent.

*Taxes — should be collected from the person against whom they are assessed, although he has sold the land before such taxes were levied.*

After the assessment for the year 1876 had been made, and on or about August twenty-second of that year, one Monroe conveyed his undivided three-eighths interest in certain real estate in the city of Syracuse to the plaintiff. In October following the city taxes, and in December the State and county taxes, were extended and levied upon the property. Thereafter the owners of the other five-eighths of the property paid their proportionate share of the tax, leaving the three-eighths which was assessed to Monroe unpaid. The plaintiff having refused to pay the tax the defendant's tax collector, under and pursuant to his warrant, seized certain personal property belonging to the plaintiff and sold it.

*Held,* that it was the duty of the collector to collect the tax from the person against whom it had been assessed, and that in case he could not so collect it the tax became a lien upon the land.

That he had no right to enforce the payment of the tax from the plaintiff, by the sale of his personal property, and that the city was liable for his acts in so doing.

*Rundell* v. *Lakey* (40 N. Y., 513) followed; *Barlow* v. *St. Nicholas National Bank of New York* (63 id., 399) distinguished.

APPEAL from a judgment, entered upon the report of a referee in favor of the defendant in Onondaga county.

*Waters, McLennan & Dillaye,* for the appellant.

*M. A. Knapp,* for the respondent.

HAIGHT, J.:

In the year 1876 the assessors of the city of Syracuse assessed certain real estate, known as the Syracuse House property, to Allen Monroe and two other persons, who then owned the same as tenants in common, Monroe being the owner of an undivided three-eighths thereof. After the assessment, and on or about the 22d of August, 1876, Monroe sold and conveyed his interest in the property to the plaintiff and one Jacob Crouse, who then entered into, and ever since have been, in the possession thereof. In October following the city taxes of that year were extended and levied upon the property, and in December the State and county taxes were extended and levied. The owners of the other five-eighths of the property paid their proportionate share of the tax, leaving the three-eighths which was assessed to Monroe unpaid. The plaintiff refused to pay the tax and thereupon the defendant's tax collector, under and pursuant to his warrant, seized certain personal property belonging to the plaintiff, advertised and sold the same. The plaintiff brings this action to recover pay for the property so taken and sold.

There appears to be no conflict in the evidence upon this branch of the case.

The referee has found that the plaintiff is not entitled to recover.

A somewhat similar question was presented in the case of *Rundell v. Lakey* (reported in 40 N. Y., 513). In that case the conveyance was made after the assessment, and before the tax was levied. The question was as to which of the parties was liable for the tax, the grantor or grantee. It was in that case held that the collector was not only authorized, but it was his duty to collect the tax, if not otherwise paid, by seizing and selling the goods of the person against whom the tax has been assessed, or of any goods in his possession; that the person against whom the tax was assessed was primarily liable; that the tax levied is not a tax imposed upon the land, but that it is imposed upon the person on account of his ownership of the land; and that he is primarily liable for the payment of it; that the tax when levied simply becomes a lien upon the land.

Under this decision it would appear that the plaintiff was not liable for the payment of the tax for which his property was seized and sold.

Monroe was the owner of the real estate at the time of the assessment, and is the person named in the warrant who should pay the tax. Monroe is primarily liable. If he fails to pay, and the collector is unable to make the same out of his personal property, then the real estate may be sold. But we do not understand that the personal property of the plaintiff, in any event, would be liable to seizure and sale.

We are aware that this case in the court of appeals has been distinguished in the case of *Barlow* v. *The St. Nicholas National Bank of New York* (reported in 63 N. Y., 399.)

In that case the conveyance was made after the assessment and before the tax was levied. The action was brought for an alleged breach of a covenant against incumbrances contained in the deed. The court in that case held that the tax did not become a lien upon the real estate until it was levied by the board of supervisors, and consequently there was no incumbrance upon the land at the time the deed was executed and delivered. Nothing, however, in that case controverts or disapproves of the questions decided in the former case.

The statute provides that " Every person shall be assessed in the town or ward, where he resides, *when the assessment is made*, for all lands then owned by him within such town or ward," etc. (Art. 1, tit. 2, chap. 13, part 1 of the Revised Statutes; 1 R. S., 389.)

Section 8 of article 2 of the same title (1 R. S., 390) provides: That " between the first days of May and July in each year, they (the assessors) shall proceed to ascertain, by diligent inquiry, the names of all the taxable inhabitants in their respective towns or wards, and also all the taxable property, real or personal, within the same."

Section 9 (1 R. S., 390) provides: " They shall prepare an assessment roll, in which they shall set down in four separate columns and according to the best information in their power :

1. In the first column, the names of all the taxable inhabitants in the town or ward, as the case may be.

2. In the second column, the quantity of land to be taxed to each person.

3. In the third column, the full value of such land, according to the definition of the term land as given in the first Title of this Chapter.

4. In the fourth column, the full value of all the taxable personal property owned by such person, after deducting the just debts owing by him."

This roll, under the statute, has to be completed on or before the first day of September and delivered to the supervisor of the town. As so completed it constitutes the basis on which the tax is imposed by the supervisors. A person so assessed for personal property becomes liable to pay the tax when levied, even though in the meantime he should cease to become the owner thereof by reason of its loss or destruction.

The same rule prevails with real estate; its value, in the meantime, from various causes may have greatly depreciated, yet such depreciation could not change or alter the amount of the tax to be levied.

These various provisions would seem to indicate the legislative intent to fix the liability for the tax upon the owner at the time of the assessment, or the time of the completion and delivery of the roll by the assessors to the supervisor. This is undoubtedly the case with personal property, and the statute appears to make no distinction in this regard as to real estate.

The judgment should be reversed, and a new trial ordered before another referee, costs to abide the event.

SMITH, P. J., and HARDIN, J., concurred.

So ordered.